UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| | | |
|---|---|---|
| DAN ROBERT ALLEY | ) | |
| | ) | |
| V. | ) | NO. 2:11-CV-144 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |

## REPORT AND RECOMMENDATION

The matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. Plaintiff's application for disability insurance benefits was denied following an administrative hearing before an Administrative Law Judge ["ALJ"]. Both the plaintiff and the defendant Commissioner have filed dispositive Motions [Docs. 10 and 12].

The sole function of this Court in making this review is to determine whether the findings of the Secretary are supported by substantial evidence in the record. *McCormick v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Secretary's decision must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human*

*Services*, 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Additionally, in this case, the Court must determine if the plaintiff was allowed the opportunity at the hearing to fully and fairly develop his case.

Plaintiff's insured status, necessary for disability insurance benefits,[1] expired on September 30, 2005. At that time, he was 59 years of age with a high school equivalency education. Plaintiff asserted he was disabled due to back pain, hip pain, arthritis, prostate cancer, a heart attack, high cholesterol and high blood pressure. Plaintiff must prove that he was disabled by a severe impairment prior to September 30, 2005.

The only one of the asserted impairments which the ALJ found existed prior to September 30, 2005, was back pain. He found that the plaintiff did not have a severe impairment at any time prior to the expiration of his insured status. (Tr. 20). He thus found that the plaintiff was not disabled. (Tr. 25).

The Court notes that the ALJ who rendered the hearing decision, the Honorable S. D. Schwartzberg, was not the same ALJ who presided over the administrative hearing, the Honorable Peter Z. Behuniak. The hearing decision was rendered on July 29, 2009, while the hearing was held on July 9, 2009. All rulings at the hearing were made by Judge Behuniak.

The evidentiary basis for the ALJ's decision was primarily the testimony of Dr. Susan

---

[1] Supplemental Security Income was not sought by plaintiff.

Bland, a medical expert who reviewed all of plaintiff's medical records and testified at the administrative hearing. Dr. Bland noted the medical evidence prior to the expiration date. She mentioned a Tennessee Department of Transportation medical examination in 2000 when plaintiff applied for a commercial driver's license. There was no mention of any health problems and the plaintiff had a normal range of motion in his extremities. (Tr. 31). Dr. Bland then noted that in late November, 2002, plaintiff complained of low back pain. She said that the plaintiff was actively farming at that time and that he had a normal gait, normal strength, and the diagnosis was strain. A month later, plaintiff was still having problems with his lower back with tenderness in his sacroiliac joint. He still had a good range of motion. Except for some injuries in 2005 unrelated to any impairment plaintiff alleges was disabling, that was the totality of the medical records from the period before plaintiff's insured status expired. (Tr. 32).

At that point, the ALJ asked the plaintiff's counsel if he had any questions. Plaintiff responded that "there is a 2007 x-ray that indicates chronic arthritis" (found at Tr. 244-46), and he wanted to ask Dr. Bland if she could relate that condition back to the time before plaintiff's insured status expired. The ALJ immediately advised plaintiff's counsel "[n]o, no, no. No, you can't. I don't want to hear about anything in 2007. I'm sorry, Counsel, I just don't. Just because he had something in 2007 doesn't mean he had it in 2005." After some colloquy not relevant to the subject x-ray, counsel elected not to ask Dr. Bland any questions at that time. (Tr. 32-33).

After some testimony by the plaintiff about his activities and his health problems, the ALJ asked Dr. Bland some more questions about the plaintiff's pre-2005 medical records.

3

(Tr. 36-37). This was followed by more examination of the plaintiff by his lawyer. When he testified about hip pain in 2002, Dr. Bland asked if she could ask the plaintiff a question. (Tr. 38). This was allowed by the ALJ and she asked plaintiff to show her where he felt the pain in his hip. After he told her where the pain was, Dr. Bland asked to make a comment, which the ALJ allowed her to do. She stated "at the time that he had developed prostate cancer, which is in 2007, he had a CT exam of his abdomen...and it showed something called fibrodysplasia in the left femur." She explained that "this is a lesion which usually if there is just one in the body, it's usually asymptomatic." She then stated that this lesion, discovered in 2007, "had probably been there most of his life...," and that it wouldn't explain why he was having back and bilateral hip pain. She said "I studied that situation," and that plaintiff had not "mentioned localized hip pain at any time prior to the DLI, or even after the DLI." She did not think the lesion "was a significant contributing factor." At that point, the ALJ allowed plaintiff's counsel to "go ahead," and "follow-up with Dr. Bland." He asked if the lesion could "cause any limitations." Dr. Bland stated it would only usually cause pain if it led to a fracture, which had not happened in this case. Counsel asked Dr. Bland no more questions and the hearing concluded. (Tr. 39-40).

Besides the medical records, the plaintiff also obtained a medical assessment from Dr. James McCoy, a physician who had treated the plaintiff both before and after the disability insurance expiration date. He opined that the plaintiff could lift a maximum of 30 pounds occasionally and 15 pounds frequently. He said the "medical finding" which supported this was "pain in walking and standing." He stated the plaintiff could stand and walk for 3 hours in an 8-hour day, and for ½ hour without interruption. He said this was based upon "no

4

physical findings–patient history." He said the plaintiff could sit for 6 hours, ½ hour without interruption, saying "patient gets numb in legs with prolonged sitting." In opining plaintiff could not balance, could do a minimal amount of crawling, and could occasionally climb, stoop, kneel and crouch, he said "patient describes pain and severe unsteady with these activities." He stated that these limitation existed on December 31, 2005, and before "to a lesser extent." (Tr. 476-77).

Plaintiff first asserts that the ALJ erred in finding no severe impairment. In this regard, he asserts that the ALJ did not give appropriate weight to the opinion of his treating physician, Dr. McCoy, who provided the medical assessment detailed immediately above, which he asserts at the very least met the "*de minimis*" hurdle for establishing a severe impairment prior to September 30, 2005.

The Sixth Circuit, from time immemorial, has held that "the step two severity regulation...has been construed as a *de minimis* hurdle in the disability determination process...Under the prevailing *de minimis* view, an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). *citations omitted.* The *de minimis* standard exists to allow "the threshold dismissal of claims obviously lacking medical merit." *Id.* "The purpose of the second step of the sequential analysis is to enable the Commissioner to screen out 'totally groundless claims.'" *Griffeth v. Commissioner of Social Security*, 217 F. App'x 425, 428 (6th Cir. 2007), quoting *Farris v. Sec'y of HHS*, 773 F.2d 85, 89 (6th Cir. 1985).

Here, Dr. Bland reviewed all of the plaintiff's treatment records prior to the expiration

5

of his insured status, including the records of Dr. McCoy. Based solely upon those records, she opined that the existence of a severe impairment was not borne out. On the other hand, the assessment of Dr. McCoy, at best, was vague as to the medical findings which supported the restrictions he imposed. In one place, dealing with the ability to stand and walk, he said there were "no physical findings" to support his assessment, and that it was based upon the "patient history." In another, dealing with postural limitations, he based it upon what the plaintiff described. It is uncertain whether Mr. Alley "described" the pain during visits prior to September 30, 2005, or at the time Dr. McCoy completed the assessment in 2009. Finally, when asked the ultimate question regarding whether these limitations existed prior to that date, Dr. McCoy said they did, but "to a lesser extent." How much less, he does not say, although the Court appreciates his forthrightness.

A "medical expert" is entitled to great weight if they have familiarized themselves with the entire pertinent medical record. Their well-supported opinions can be given greater weight than those of consultative examiners, as in *Barker v. Shalala* 40 F.3d 789 (6th Cir. 1994), and treating physicians, as in *Combs v. Commissioner of Soc. Sec.,* 459 F.3d 640 (6th Cir. 2006), and *Cutlip v. Secretary of H.H.S.*, 25 F.3d 284 (6th Cir. 1994). In order to accept the opinion of a non-examining medical expert or State Agency physician over that of a treating physician, the non-treating source's opinion must be well-supported, and the ALJ must give adequate and compelling reasons for discounting the opinion of the treating physician. A lack of objective findings is a primary reason, as the Sixth Circuit stated in *Combs, supra,* "[g]iven the lack of objective evidence of disability in Dr. Templin's reports and the ALJ's other observations, the ALJ could discount his (the treating physician's)

opinion." *Id.*, at 652.

Here, the ALJ rejected the opinion of Dr. McCoy because he "provided his assessment well after the claimant's date last insured of September 30, 2005, and that he clearly indicated the form was based on the claimant's history and not on physical findings." (Tr. 25). He also carefully recounted the testimony of Dr. Bland and the reasons he gave it great weight. He discussed all of the conditions besides back which plaintiff alleged, such as hip pain, prostate cancer, a heart attack, high cholesterol, high blood pressure, and arthritis. As to each he found that they only manifested themselves after September 30, 2005.

Insofar as the record discussed by the ALJ and Dr. Bland exists, the Court agrees with his assessment of the evidence, except in one detail.

This is referenced by the plaintiff in his second argument. He asserts that the ALJ erred in refusing to let his attorney question Dr. Bland at the hearing regarding the 2007 bone scan, taken only 19 months after the insured status expired, which showed "findings consistent with chronic arthritis of his shoulders, sternoclavicular joints, lower cervical spine, and both knees and likely on the basis of degenerative arthritis." (Tr. 245). As stated above, plaintiff's counsel was denied the opportunity in forceful terms to show Dr. Bland that scan and ask her opinion as to whether it could show a severe impairment of arthritis in existence prior to the expiration date.

The Commissioner first argues that the scan was properly regarded as irrelevant by the ALJ because it was done after the plaintiff's insured status expired. With many medical conditions which become severe spontaneously, such as physical trauma, heart attacks, etc., this is an understandable argument. The condition wasn't there one minute and was there in

7

all its ferocity the next. But chronic arthritis is not a spontaneously arising condition. At some point it can become *severe* and cause more than a minimal negative effect on work ability. At the very least, plaintiff should have been entitled to have asked Dr. Bland, whose opinions are the foundation for the ALJ's decision, if she thought that chronic arthritis observed in 2007 would have diminished the plaintiff's exertional or postural capabilities to some degree.

Obviously, Dr. Bland herself felt it was worth mentioning the 2007 CT scan (248-49), taken the very next day after the bone scan, which showed the lesion in the plaintiff's left femur, and discussed how a single such lesion would not have been "a significant contributing factor," to plaintiff's complaint of hip pain prior to his insured status expired. And yet, counsel was not allowed to even ask about the bone scan just because of the date on which the imaging was done.

The Commissioner also asserts that the plaintiff's counsel was permitted to cross-examine Dr. Bland after she testified about the femoral lesion, and that "[t]hus, the ALJ provided plaintiff's attorney a full opportunity to cross-examine Dr. Bland...[i]f plaintiff's attorney had additional questions, he should have posed them to Dr. Bland at that time." The cross-examination permitted of Dr. Bland by the ALJ at that time clearly applied to the testimony Dr. Bland herself had interjected relating to *the femoral lesion detected* on the 2007 bone scan.[2] In no way would a reasonable, experienced attorney presume that he or she was free to ask Dr. Bland about the 2007 bone scan which the ALJ had forcefully and with

---

[2]In this regard, the Commissioner's brief plays "fast and loose" regarding what topic the ALJ was permitting the resumed cross-examination on.

8

finality refused to permit a few minutes earlier. Being permitted to cross examine about a completely unrelated topic does not cure the original taint.

And tainted it was. Contrary to the Commissioner's assertion that anything shown in the April 2007 scan, and any testimony by Dr. Bland on that subject, was irrelevant, the Court disagrees for the reasons described hereinabove. Judge Behuniak erred, and denied plaintiff a full hearing, by forbidding cross-examination regarding the bone scan. For that reason, the Commissioner's decision was not substantially justified.

The Court would caution both parties that this case is extremely fact-intensive. It should not be read to say that any serious condition discovered after a plaintiff's insured status expired relates back, or that counsel is always free to present evidence of, or cross-examine medical experts regarding same. The plaintiff in this case had chronic arthritis 19 months after his insured status expired, and it is not inconceivable that this condition as shown on the scan could have led Dr. Bland to opine that it caused enough limitation of function during the insured period to have constituted a severe impairment and perhaps caused non-exertional limitations which would have necessitated the use of the vocational expert, who by the way was present at the hearing and not utilized.[3] (Tr. 26).

The ideal solution to the present conundrum would be for a new hearing to be held and Dr. Bland or some other qualified medical expert questioned regarding the scan and its impact on the plaintiff's ability to engage in work activities. This is the minimum which must be done. In any event, the case should be remanded for a new administrative hearing.

---

[3] By the same token, Dr. Bland could have interpreted the scan to cause no serious limitation on work activities even in 2007, much less in 2005. The point is ***nobody knows***.

9

Therefore, it is respectfully recommended that the plaintiff's Motion for Summary Judgment [Doc. 10] be GRANTED, and the defendant Commissioner's Motion for Summary Judgment [Doc. 12] be DENIED.[4]

Respectfully submitted:

s/ Dennis H. Inman
United States Magistrate Judge

---

[4] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).